# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

KYLE D. PIKALUK                          CIVIL ACTION NO. 18-0215

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

HORSESHOE ENTERTAINMENT, LP,             MAGISTRATE JUDGE HORNSBY
ET AL.

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 54) filed by Defendants, Horseshoe Entertainment, LP ("Horseshoe"), Steven Jones, Rob Brown, Jason Williams, Federico M. Arends, III, and James LaFleur (hereinafter referred to as the "Horseshoe Defendants"). The Horseshoe Defendants move for summary judgment on the grounds that they are not state actors as required by Title 42, United States Code, Section 1983. See id. Alternatively, they argue Plaintiff Kyle D. Pikaluk ("Pikaluk") is unable to establish the essential elements of his Section 1983 claims. See id. The Horseshoe Defendants also seek summary judgment as to Pikaluk's Louisiana state law claims. See id. Pikaluk opposed the Motion for Summary Judgment. See Record Documents 58 & 63. For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all of Pikaluk's claims are **DISMISSED WITH PREJUDICE**.

## BACKGROUND[1]

On March 17-18, 2017, Pikaluk was a patron at the Horseshoe Hotel & Casino in

---

[1]The Horseshoe Defendants filed a Statement of Uncontested Material Facts. See Record Document 54-1. In response, Pikaluk filed a Statement of Disputed and Contested Facts. See Record Document 58-1. The Court has incorporated the undisputed facts from these two filings into the background section of the instant Memorandum Ruling. The disputed facts are noted and citations to the summary judgment record are provided for any such disputed facts.

Bossier City, Louisiana. The Horseshoe Hotel & Casino is a licensed gaming establishment and is an affiliate of Caesars Entertainment Corporation. Defendants Steven Jones, Rob Brown, Jason Williams, Federico M. Arends, III, and James LaFleur were, at all times relevant herein, employed by Horseshoe.[2]

Pikaluk is an "advantage player," meaning he utilizes techniques and strategies in order to gain an advantage or "edge" over the casino, thereby increasing his chance of winning. He classifies this case as "casino patron abuse," maintaining that Horseshoe wanted to punish him for winning more than $30,000 playing blackjack at their casino during the late night hours of March 17, 2017 and the early morning hours of March 18, 2017. Record Document 63 at 6; Record Document 58-1 at ¶ 9. Pikaluk now seeks monetary damages from the Horseshoe Defendants as a result of events that occurred on the premises of the Horseshoe Hotel & Casino on March 18, 2017, the date he attempted to cash in his chips. See Record Document 54-1 at ¶ 5; Record Document 58-1 at ¶ 1; Record Document 63 at 6-7. He asserts Section 1983 claims; state law tort claims of false arrest/conspiracy for false arrest, false imprisonment/conspiracy for false imprisonment, battery/conspiracy to commit battery, malicious prosecution/conspiracy for malicious prosecution, negligence and gross negligence, and conversion; and violation of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"). See Record Document 31.

---

[2]On December 27, 2018, Pikaluk and Defendants Joseph C. Thomerson, Donald Razinsky, and Jordan D. Johnson filed a Joint Stipulation of Dismissal. See Record Document 53. These former defendants were, at all times relevant herein, police officers employed by the Bossier City Police Department. Donald Razinsky was a reserve officer for the Bossier City Police Department.

The Horseshoe Defendants contend that prior to March 18, 2017, Pikaluk had been banned from numerous casinos, including several Caesars Entertainment affiliated properties. <u>See</u> Record Document 54-1 at ¶ 7, citing Record Document 54-5 (Pikaluk Deposition) at 36-45 & Record Document 54-13 (Interrogatory Response) at 10-11. Pikaluk contests this fact and asserts that the Horseshoe Defendants have mischaracterized his deposition testimony and interrogatory responses. <u>See</u> Record Document 58-1 at ¶ 2. Instead, he maintains that he was "backed off" or "asked to leave" the casino properties, as compared to being banned and told not to return. <u>Id.</u> Pikaluk recalls only two casinos that imposed a ban against him – one in Canada and one in Mesquite, Nevada. <u>See id.</u> He maintains that he was never banned from returning to a Caesars affiliated property. <u>See id.</u>

While a patron at Horseshoe on March 17-18, 2017, Pikaluk used his "advantage player" techniques and seemingly did not want his identity known to the casino. The Horseshoe Defendants eventually identified him. According to several of the Horseshoe Defendants, after referencing Pikaluk's identity in the electronic casino management system, Horseshoe supervisory level employees determined that, as of June 2016, Pikaluk was a companywide ban, meaning he was permanently banned from all Caesars Entertainment affiliated properties. Record Document 54-1 at ¶ 9, citing Record Document 54-11 (James LaFleur Deposition) at 88 -91; Record Document 54-10 (Rob Brown Deposition) at 62-63; Record Document 54-9 (Steven Jones Deposition) at 70-71. The WinNet message, which Pikaluk produced, states:

> GUEST IS EVICTED COMPANYWIDE. CONTACT SECURITY. LHEBERT 06/23/16.

Record Document 63-2 (WinNet Message) at 17. Pikaluk contests the meaning of the message in the electronic casino management system, alleging:

> Defendants only saw messages in the WinNet system that Plaintiff was a "companywide ban". They did not (and could not) "determine" from the WinNet messages that Plaintiff had actually been banned from Caesars propertie [sic] or that Caesars had actually sent Plaintiff notice that he was banned. . . . Defendants . . . did not contact anyone at Caesars to obtain verification or confirmation of the WinNet messages or whether Plaintiff had been notified of any companywide ban and had received such notice.

Record Document 58-1 at ¶ 3.

On March 18, 2017, after learning of the companywide ban in the electronic casino management system and knowing that Pikaluk was on the premises (specifically, at the cashier's cage attempting to cash in a portion of his chips), the Horseshoe Defendants notified the Bossier City Police Department. Horseshoe refused to cash in Pikaluk's chips and returned the chips and his Canadian passport to him. He was escorted from the cage area and onto the entry ramp where he encountered Bossier City Police Officers. See Record Document 58-1 at ¶ 8(l). No Horseshoe employee physically laid hands on Pikaluk.

Sergeant Joseph C. Thomerson ("Sergeant Thomerson"), Officer Jordan D. Johnson ("Officer Jordan"), and Reserve Officer Donald Razinsky were dispatched to the scene by the Bossier City Police Department. There is no dispute that Pikaluk was ultimately arrested for criminal trespassing. See Record Document 54-15. Sergeant Thomerson was the senior officer and made the decision to arrest Pikaluk. See Record Document 54-6 (Sergeant Thomerson Deposition) at 28-29, 34; Record Document 54-7 (Officer Johnson Deposition) at 41. Sergeant Thomerson stated that his decision was "based on the statements from the Horseshoe guys that were there, the security, and then seeing Mr.

Pilaluk on the property." Record Document 54-6 at 8. He admitted that his decision was made prior to talking to Pikaluk, but only after seeing him on casino property. <u>See id.</u> Sergeant Thomerson and Officer Johnson believed the elements of criminal trespassing were satisfied and that probable cause to arrest existed. <u>See</u> Record Document 54-6 at 25-29, 100-101; Record Document 54-7 at 91-93. Officer Johnson further stated that Pikaluk was arrested, as compared to issuing him a summons, because he was not from the immediate Shreveport-Bossier area. <u>See</u> Record Document 54-7 at 92-93. On July 11, 2017, the criminal trespass charge against Pikaluk was nolle prossed by the Bossier City Attorney. <u>See</u> Record Document 54-15 at 8.

During his deposition, Sergeant Thomerson was questioned extensively about his decision to arrest Pikaluk. He stated that Steven Jones, the Horseshoe Security Supervisor, made the initial complaint regarding Pikaluk. <u>See</u> Record Document 54-6 (Sergeant Thomerson Deposition) at 79. Sergeant Thomerson further testified:

> Q. Why were you only dealing with [Steven] Jones.
>
> A. That's what – who was making the complaint.
>
> Q. The complaint?
>
> A. The call that came in.
>
> . . .
>
> A. He was – my understanding, he was a supervisor. He was the supervisor at the time.
>
> . . .
>
> Q. . . . And when you investigate and respond to a trespassing call, what steps do you take to confirm that the suspect has, in fact, been banned, to use your term.

A.      How reliable is the person making that complaint to me.

Q.      And in this instance, Mr. [Steven] Jones.

A.      Yes.

Q.      No, . . . did Mr. [Steven] Jones ever tell you that the Horseshoe itself had banned Mr. Piklauk?

A.      He said he's been banned from Horseshoe and all their properties.

. . .

A.      He told me that Mr. Pikaluk had been banned, had been notified that he is banned from the property.

. . .

A.      That he has been banned, that Mr. Pikaluk knew he had been banned, that he had certified letters that he had been banned.

Q.      Okay.  And that's the information you relied upon to arrest Mr. Pikaluk for trespassing.

A.      Mr. [Steven] Jones' statements, yes.

. . .

Q.      And he told you all that before you arrested Mr. Pikaluk.

A.      Oh, yes.  He told me that when we were walking in.

Id. at 79, 100-101.  Sergeant Thomerson prepared a police report.  See Record Document

54-15 at 2-4; Record Document 54-6 at 11.   The report reflects officer interaction with

Pikaluk, as the report states "K. Pikaluk denied having knowledge of being banned."  Id. at

4; Record Document 54-6 at 28-29.  Sergeant Thomerson further testified that he trusted

Steven Jones.  See id. at 27-29.

Officer Johnson testified in his deposition that Sergeant Thomerson made the

decision to arrest Pikaluk for criminal trespassing, but Officer Johnson "physically [made]

the arrest." Record Document 54-7 at 4. Officer Johnson also discussed his personal interaction with Pikaluk, acknowledging that Pikaluk denied having been banned and that Officer Johnson did not believe Pikaluk was giving him "anything to substantiate his claims." Id. at 6. Officer Johnson explained that his response, and that of the Bossier City Police Department, to a request for assistance with a trespasser would be consistent as to all of the casinos in Bossier City. See id. at 7-8. Officer Johnson stated that police would respond, the casino personnel would tell the officer(s) that a person had been banned, that the person knew, and then the person would be arrested. See id. at 9.

<h2 style="text-align:center">LAW AND ANALYSIS</h2>

### I. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v.

---

[3]The Court notes that Rule 56 now requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## II.  Federal Claims.

The Horseshoe Defendants are private citizens. Yet, in his suit, Pikaluk contends that he was arrested and prosecuted for criminal trespassing through the ***joint action*** of the Horseshoe Defendants and the Bossier City Police Officers. See Record Document 58-1 at ¶ 8 (emphasis added). The allegation of joint action is the main basis of Pikaluk's Secton 1983 claims against the Horseshoe Defendants. To support his allegation, Pikaluk points to the following, amongst other, facts: Steven Jones prior employment with the Bossier City Police Department; Sergeant Thomerson and Officer Johnson's prior "off duty" security work at Horseshoe; the lack of any independent investigation or observations of Pikaluk's conduct by the Bossier City Police Officers; and the Horseshoe Defendants' failure to provide the Bossier City Police Officers with any writing evidencing the companywide ban. Id. at ¶¶ 8(a), (b), (c), & (h). He further argues that he was arrested for criminal trespassing pursuant to a preexisting, customary plan, understanding, practice, and arrangement between the Bossier City Police Department and Bossier City casinos for arresting persons designated as trespassers. See id. at ¶ 8(I).

To state a claim for relief under Title 42, United States Code, Section 1983, Pikaluk must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.

See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 985 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Id.

The Supreme Court has employed a number of tests for deciding whether a private actor's conduct can be fairly attributable to the State for purposes of Section 1983 liability. See Cornish v. Correctional Services Corp., 402 F.3d 545, 549 (5th Cir. 2005). These tests include the public function test, the state compulsion test, the nexus or state action test, and the joint action test. See id. at 549-550. Here, the Court will focus on the nexus or state action test and the joint action test.[4]

The nexus or state action test "considers whether the State has inserted itself into a position of interdependence with the private actor, such that it was a joint participant in the enterprise." Id. at 550. "The focus of the inquiry into whether a private actor can be subjected to constitutional liability is whether 'such a close nexus between the State and the challenged action' exists 'that seemingly private behavior may be fairly treated as that of the State itself.'" Morris, 277 F.3d at 747-748, citing Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc., 531 U.S. 288, 121 S.Ct. 924 (2001). In Morris, the Fifth

---

[4]The "public function test" and the "state compulsion test" are inapplicable to the instant matter. The Court notes that the nexus or state action test and the joint action test are similar. Pikaluk specifically uses the phrases "joint action," "joint and collusive actions," and "joint action/participation" in his briefing. See Record Document 63 at 14, 25-30; Record Document 58-1 at ¶ 8. Pikaluk references and relies upon Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970), Smith v. Brookshire Bros., 519 F.2d 93 (5th Cir. 1975), Phillips v. Vandygriff, 711 F.2d 1217 (5th Cir. 1983), and Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743 (2001). These cases discuss both the nexus or state action test and the joint action test. Finally, the Horseshoe Defendants state in their motion that "the nexus/state action test and the joint action test are closely related, so they will be discussed in combination below." Record Document 54-2 at 13.

Circuit held:

> We have refined application of the doctrine since [Smith v. Brookshire Brothers, Inc., 519 F.2d 93 (1975)] in three subsequent decisions, White, Hernandez, and Bartholomew, in which we established that a merchant is not a state actor unless the conduct on the part of a guard or officer giving rise to the claimed deprivation occurred based solely on designation of suspicion by the merchant and was not accompanied by any independent investigation by the officer. . . .  In our two most recent decisions, Hernandez and Bartholomew, we clarified that the "vice" exposed by this court in our two earliest cases, Brookshire and Duriso, in which we found merchants to be state actors, "was that the police, pursuant to a 'preconceived plan,' would arrest any person merely because he was designated for arrest by the store [employee]." Hernandez, 673 F.2d at 772 (citations omitted). See also Bartholomew, 889 F.2d at 63 (explaining that the "crucial" focus of the inquiry is whether an officer "acted according to a preconceived plan and on the say-so of the private actor, not on the basis of [the officer's] own investigation").

Morris, 277 F.3d at 749.  An officer's partial reliance on a report of suspicion made by a merchant employee is insufficient to create state action where the officer also conducts an independent investigation of the alleged crime.  See id.  The Fifth Circuit held "that interviewing the employee to obtain an eyewitness account can constitute sufficient independent investigation where the officer was not an eyewitness to any conduct constituting an alleged crime."  Id.  Courts within the Fifth Circuit are not to "subject a merchant to § 1983 liability unless an officer has failed to perform independent investigation, and that evidence of a proper investigation may include such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report."  Id. at 749-750.

Under the joint action test, "private actors will be considered state actors where they are willful participants in joint action with the State or its agents."  Cornish, 402 F.3d at 550. To maintain a claim that a private citizen is liable under Section 1983 on the basis of joint

action with state officials, Pikaluk "must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." Polacek v. Kemper County, Miss., 739 F.Supp.2d 948, 952 (S.D.Miss. 2010). It is well settled that private parties do not become state actors merely by calling upon law enforcement for assistance. See Guillot v. Coastal Commerce Bank, No. 10-2092, 2010 WL 4812959, *3 (E.D.La. Nov. 19, 2010). Likewise, private citizens who give information to law enforcement do not become state actors under Section 1983 when the information is used to effect an arrest, even if the citizen knew that the information was false. See Guillot, 2010 WL 4812959, *3.

The Court must first identify the specific conduct of which Pikaluk complains. See Cornish, 402 F.3d at 550. Here, Pikaluk's Second Amended Complaint and his opposition indicate that such conduct was his arrest. This was an action by the Bossier City Police Department, not the Horseshoe Defendants. If the Court were to assume that the conduct was the initial decision by the Horseshoe Defendants to request assistance from the Bossier City Police Department, then the critical issue is whether such request coupled with the subsequent decision by the officers to arrest Pikaluk was part of a preconceived plan, a joint action, and/or a conspiracy.

In Latham v. City of Bossier City, No. 11-0597, 2012 WL 4325821 (W.D. La. Sept. 19, 2012), Defendants Boomtown Casino and two of its employees filed a motion for summary judgment seeking dismissal of Plaintiff's Section 1983 claims. The district court applied the nexus or state action test, granted Boomtown Casino's summary judgment, and dismissed Plaintiff's Section 1983 claims against Boomtown Casino and its two employees.

Plaintiff had argued "that Boomtown [Casino] and the Bossier City Police Department have a practice or policy of working together to remove 'nuisance patrons' from the casino, which frequently leads to an arrest." Latham, 2012 WL 4325821, *4. Plaintiff claimed there was a pre-existing plan between Boomtown Casino and the Bossier City Police Department to arrest nuisance or disorderly patrons simply because the casino said to do so. See id. The district court held that Boomtown Casino's official policy was to only call for police assistance and that the summary judgment evidence demonstrated that the Bossier City Police Department's procedures and response as to Boomtown Casino were "the same as any other [casino] establishment." Id. There was also competent summary judgment evidence to demonstrate an independent investigation by the officers. See id. In Cook v. City of Shreveport, No. 10-0809, 2011 WL 3665000 (Aug. 19, 2011), this Court analyzed Plaintiff's Section 1983 claims against Sam's Town Casino using the nexus/state action test and the joint action test. This Court granted summary judgment and dismissed the Section 1983 claims against Sam's Town Casino, finding:

> As noted previously, private actors who give information to law enforcement do not become state actors under Section 1983 when the information is used to effect an arrest, even if the citizen knew that the information was false. See Guillot, 2010 WL 4812959, *3. Thus, Cook's argument that Sam's Town gave false or exaggerated information to the officers is of no matter. Additionally, there is simply no competent summary judgment evidence to support a finding that the Shreveport Police Department, more particularly the three officers involved in the incident in question, and Sam's Town had any discussion or agreement to deprive Cook of his constitutional rights.
> Conversely, there is competent summary judgment evidence demonstrating that the three officers, namely Officer Robinson, conducted an independent investigation.

Id. at *5. This Court further noted that there was no competent summary judgment evidence demonstrating that Sam's Town Casino employees and the officers had a

meeting of the minds to violate Cook's constitutional rights.  See id.

Here, Pikaluk focuses on the alleged lack of independent investigation by the police officers and his contention that there was a preexisting, customary plan, understanding, practice, and arrangement between the Bossier City Police Department and Bossier City casinos for arresting persons designated as trespassers.  Pikaluk also maintains that video and audio evidence, to include stray comments by Sergeant Thomerson, indicate there was a conspiracy between the Horseshoe Defendants and the Bossier City Police Department Officers.  See Record Documents 63-3 (Notice of Manual Attachments for Pikaluk Exhibits 35-41).

The Court first discounts Pikaluk's contention that the Horseshoe Defendants knowingly provided the Bossier City Police Department Officers with false information, that is, that Pikaluk had received notice of the companywide ban entered on WinNet and knew he was banned from Caesars affiliated properties.  As stated by this Court in Cook, private actors who give information to law enforcement do not become state actors under Section 1983 when the information is used to effect an arrest, even if the citizen knew that the information was false.  See Cook, 2011 WL 3665000, *5.  Pikaluk's argument as to the lack of an independent investigation likewise fails.  Sergeant Thomerson testified that he made the decision to arrest, that is, he made his own determination concerning arrest and probable cause after arriving on scene.  The Court acknowledges that Sergeant Thomerson did minimal investigating once he arrived on the scene; yet, there is competent summary judgment evidence that he interviewed Steven Jones, saw Pikaluk on the casino premises, and wrote his own report.  See Morris, 277 F.3d at 749 ("interviewing the employee to obtain an eyewitness account can constitute sufficient independent investigation where

officer was not an eyewitness to any conduct constituting an alleged crime"). Despite Pikaluk's contentions to the contrary, these facts are enough to establish an independent investigation and there is no genuine dispute of material fact on this issue.

Next, Pikaluk argues that the Horseshoe Defendants are state actors because there was a preexisting, customary plan, understanding, practice, and arrangement between the Bossier City Police Department and Bossier City casinos for arresting persons designated as trespassers. This Court believes competent summary judgment evidence to establish an independent investigation negates Section 1983 liability in this case, as the Morris court held in the context of the nexus or state actor test:

> We have refined application of the doctrine since [Smith v. Brookshire Brothers, Inc., 519 F.2d 93 (1975)] in three subsequent decisions, White, Hernandez, and Bartholomew, in which we established that a merchant is not a state actor unless the conduct on the part of a guard or officer giving rise to the claimed deprivation occurred based solely on designation of suspicion by the merchant **and was not accompanied by any independent investigation by the officer**.

Morris, 277 F.3d at 749 (emphasis added). Here, the Horseshoe Defendants sought the assistance of the Bossier City Police Department for a trespasser. Yet, as previously stated, there was also an independent police investigation, thereby preventing this Court from holding that the Horseshoe Defendants are state actors.

Notwithstanding, Steven Jones testified in his deposition that "it is up to" the police department as to whether an arrest is made after Horseshoe makes a call for assistance in relation to a trespasser. See Record Document 54-9 (Steven Jones Deposition) at 6. In his deposition, Sergeant Thomerson explained that he made the decision to arrest on the ramp – "it happened there all at once." Record Document 54-6 at 31. He further testified that he did not think it was a fair assessment to say that he had the arrest pre-

planned or pre-decided.  See id.  Pikaluk seems to focus on Officer Johnson's deposition testimony that the Bossier City Police Department's response to a request for assistance with a trespasser to any Bossier City casino was consistent – the police would respond, the casino personnel would tell the officer(s) that a person had been banned, that the person knew, and then the person would be arrested.  See Record Document 54-7 at 7-9.  Without more, Officer Johnson's deposition is insufficient summary judgment evidence to establish a conspiracy or some sort of preexisting, customary plan, understanding, practice, and arrangement between the Bossier City Police Department and Bossier City casinos for arresting persons designated as trespassers.  The video evidence – showing at most stray comments – is also insufficient to establish a "conspiratorial arrangement," as alleged by Pikaluk.  Record Document 63 at 30; see also Hanna v. Home Ins. Co., 281 F.2d 298, 303-304 (5th Cir. 1960) ("Merely characterizing (defendants') conduct as conspiratorial or unlawful does not set out allegations upon which relief can be granted".).  Therefore, the Horseshoe Defendants can not be considered state actors for purposes of Section 1983 liability and the Horseshoe Defendants' summary judgment motion is granted as to Pikaluk's Section 1983 claims.[5]

## III.    State Law Claims.

Negligence/Gross Negligence

Pikaluk asserts a state law claim for negligence/gross negligence, arguing the

---

[5]Pikaluk has also made a Section 1983 conspiracy claim.  This claim fails because a conspiracy claim is not actionable without an actual violation of Section 1983.  See Hanna, 281 F.2d at 303 ("Section 1983 does not provide a cause of action for a conspiracy to deny due process; there must be an actual denial of due process before a cause of action arises.").

Horseshoe Defendants negligently caused his arrest in failing to follow Horseshoe's own security procedures and policies in requesting assistance from the Bossier City Police Department. In Pitre v. Louisiana Tech University, 673 So.2d 585 (La. 1996), the Louisiana Supreme Court explained the duty-risk analysis to determine liability under Article 2315. The duty-risk analysis examines "the conduct of each individual party and the peculiar circumstances of each case." Id. at 589. "The relevant inquiries are:

(1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?

(2) What, if any, duties were owed by the respective parties?

(3) Whether the requisite duties were breached?

(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?[6]

(5) Were actual damages sustained?

Id. at 589-590. "If the plaintiff fails to satisfy one of the elements of duty-risk, the defendant is not liable." Id. at 590. Here, the Horseshoe Defendants are not liable because Pikaluk has failed to satisfy the fourth inquiry, that is, legal causation.

In Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La. 7/10/06), 935 So.2d 669, the Louisiana Supreme Court discussed legal causation in the context of a malicious prosecution claim:

[I]t is clear that any chain of causation regarding plaintiff's subsequent detention was broken. The decision to detain plaintiff was made by the independent actions and investigation of the Sheriff's Office. Therefore, . . . . plaintiff cannot establish that he will be able to provide factual support

_____

[6]Stated another way, this inquiry focuses on whether the party's substandard conduct was a legal cause of the injuries at issue. See Toston v. Pardon, 2003-1747 (La. 4/23/04), 874 So.2d 791, 801.

sufficient to satisfy his burden of proving legal causation, an essential element of a malicious prosecution action.

Kennedy, 935 So.2d 669, 690 n. 20. In Adams v. Harrah's Bossier City Investment Company, LLC, 41,468 (La.App. 2 Cir. 1/10/07), 948 So.2d 317, Harrah's suspected that the plaintiff had stolen a $500 chip from another patron and called the police to investigate. See id. at 318. The plaintiff was arrested and charged with felony theft. See id. The district attorney's office ultimately dismissed the charge and the plaintiff sued Harrah's for damages allegedly arising out of the arrest. See id. Relying upon Kennedy, the Adams court reasoned:

> In the case sub judice, the Shreveport police conducted a similar independent investigation into the suspected theft. After the three police officers arrived, two of them viewed the video recording and arrived at a decision to arrest Mr. Adams independent of Harrah's. Plaintiffs argue that Harrah's possible involvement in commenting on the video distinguishes this case from Kennedy. In particular, Plaintiffs point out that the usual procedure, as described by one of the investigating police officers, is for Harrah's security to review the video tape with the police and point out what they believed was the criminal act. The officer was unable to recall if, in this particular instance, Harrah's security had such involvement. *Even if they did, this involvement does not rise to such a level as to prevent the police investigation from being independent of Harrah's own suspicions. As such, the independent investigation by the police breaks any legal causation.*
>
> Plaintiffs further argue that Kennedy is distinguishable because, unlike the employees in Kennedy, Harrah's security force is composed of highly trained personnel amounting to a private police force. We find this distinction unpersuasive. The reasoning of the Kennedy court is not based on the qualifications of who made the complaint, but, instead, on *subsequent and intervening law enforcement investigation*. The police in the instant case made an independent investigation just as the Sheriff's Office did in Kennedy. This is the critical factor that prevents Plaintiffs from proving legal causation on any of their claims.

Id. at 320 (emphasis added).

Here, this Court held in the context of Pikaluk's Section 1983 claims that there was

an independent police investigation. Thus, the Horseshoe Defendants were not the legal cause of Pikaluk's alleged injuries caused by his arrest. Summary judgment in favor of the Horseshoe Defendants is, therefore, granted and Pikaluk's state law negligence/gross negligence claims are dismissed.

Malicious Prosecution

Under Louisiana law, a claim for malicious prosecution requires the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff. See Miller v. E. Baton Rouge Par. Sheriff's Dep't, 511 So. 2d 446, 452 (La. 1987). Again, this Court has held there was an independent investigation by the Bossier City Police Department in this matter. Thus, the independent actions and investigation by those officers broke the chain of causation between the Horseshoe Defendants' initial complaint and Pikaluk's arrest. See Adams, 948 So.2d at 320. Thus, summary judgment is granted in favor of the Horseshoe Defendants and Pikaluk's malicious prosecution claim is dismissed.

Wrongful Arrest and False Imprisonment

"Wrongful arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his will and without statutory authority." Kennedy, 935 So.2d at 690. "The tort of false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." See id.

Pikaluk argues that the Horseshoe Defendants are liable for falsely arresting and

imprisoning him even though the actual arrest was done by the Bossier City Police Department since the arrest was procured solely through false information provided to the police.  See Record Document 63 at 21.  Moreover, he alleges that the Horseshoe Defendants arrested and falsely imprisoned him when they confined him at the cashier's cage for more than 10 minutes under the pretext of attempting to cash his chips so that the police could arrive and arrest him.  See id. at 21-22.  He asserts that he was not free to leave because the Horseshoe Defendants were holding his chips and his passport.  See id. at 22.

Pikaluk's false arrest/false imprisonment tort claim relating to his actual arrest fails. The Horseshoe Defendants were not acting under the color of law when they escorted Pikaluk to the ramp area of the casino.  All of the actions associated with the actual arrest of Pikaluk were committed by the police officers who arrived on the scene, not the Horseshoe Defendants.  See Latham, 2012 WL 4325821, *4.

Pikaluk further asserted a false arrest/false imprisonment tort claim based on his alleged detention at the cashier's cage.  He cited the Restatement (Second) Torts and a Kentucky state court case to support his claim.  See Record Document 63 at 22, n. 61 & 62.  Yet, under Louisiana law, "false imprisonment is the unlawful and **total** restraint of the liberty of the person."  Kelly v. W. Cash & Carry Bldg. Materials Store, 99-0102 (La. App. 4 Cir. 10/20/99), 745 So. 2d 743, 750 (emphasis in original).  The Kelly court went on to state that "false imprisonment may not be predicated on a person's unfounded belief that he was restrained" and that "bare words are insufficient to effect an imprisonment if the person to whom they are spoken is not deprived of freedom of action."  Id.  Here, Pikaluk has not presented competent summary judgment evidence that he was totally restrained.

There is no dispute that he waited for over 10 minutes; yet, he has not alleged that he requested the return of his passport and such request was denied.  He never alleged that he tried to leave and was restrained in any manner from doing so.  Summary judgment in favor of the Horseshoe Defendants is, therefore, granted and Pikaluk's state law false arrest/false imprisonment claims are dismissed.

Battery

Under Louisiana law, "the intentional tort of battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." Griffith v. Young, 46,184 (La. App. 2 Cir. 4/13/11), 62 So. 3d 856, 859.  Here, it is undisputed that no Horseshoe employee physically laid hands on Pikaluk.  See Record Document 54-5 at 120.  Thus, summary judgment is granted in favor of the Horseshoe Defendants and Pikaluk's battery claim is dismissed.

State Law Conspiracy

Pikaluk included a conspiracy claim with his state law claims of malicious prosecution, false arrest, false imprisonment, and battery.  "An independent cause of action for civil conspiracy does not exist in Louisiana; rather the actionable element of [A]rticle 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing plaintiff's injury."  Hardy v. Easterling, 47,950 (La. App. 2 Cir. 4/10/13), 113 So. 3d 1178, 1184.  Article 2324(a) provides, "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."  Thus, the "conspiracy claim" actually arises from "the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part."  Owens v. Byerly, 2009-262 (La. App. 3 Cir. 10/7/09), 23 So. 3d 393, 398, writ

denied, 2010-0117 (La. 4/16/10), 31 So. 3d 1063.  Simply put, Pikaluk must show an agreement existed among the Horseshoe Defendants and the Bossier City Police Department Officers to commit malicious prosecution, false arrest, false imprisonment, and/or battery.  See Thames v. Thames, 50,639 (La.App. 2 Cir. 5/18/16), 196 So.3d 653, 655-656.  He must also show there was an agreement as to the intended outcome or result.  See id.

As discussed previously in the context of Pikaluk's Section 1983 claims, Pikaluk cannot meet this burden.  He lacks competent summary judgment evidence to show that the Horseshoe Defendants and the Bossier City Police Department Officers had an agreement to commit tortious acts and/or that they likewise agreed as to the intended outcome or result.  Summary judgment in favor of the Horseshoe Defendants is, therefore, granted and Pikaluk's state law conspiracy claims are dismissed.

LUPTA

Under Louisiana law, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  La. R.S. 51:1405.  To recover under LUPTA, a plaintiff must establish some element of fraud, misrepresentation, deception or other unethical conduct.  See IberiaBank v. Broussard, 907 F.3d 826, 839 (5th Cir. 2018).  "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis."  Id.  However, courts "should find a practice unfair under the statute only when the practice offends established public policy and is immoral, unethical, oppressive or unscrupulous."  Id.  The range of acts prohibited under LUPTA is extremely narrow.  See id.  "The defendant's motivation is a critical factor—his actions must have been taken with the specific purpose of harming the competition."  Id. at 839-840.

Here, Pikaluk argues that the Horseshoe Defendant's refusal and failure to redeem and cash his casino chips is an unfair and deceptive trade practice under LUPTA. He contends that such refusal is an unethical, immoral, oppressive, deceptive, unfair, substantially injurious, and unscrupulous act and is a misrepresentation or fraud by the Horseshoe Defendants. Yet, this Court cannot find that the refusal/failure to redeem Pikaluk's chips fails within the narrowly defined prohibited practices envisioned by LUPTA. Pikaluk has pointed this Court to no case law applying LUPTA in this context. Moreover, the Horseshoe Defendants have at a minimum "a decent argument" for refusing to cash Pikaluk's chips, that is, he was on the premises and gambling despite a companywide ban. See Hadassa Inv. Sec. Nigeria, Ltd. v. Swiftships Shipbuilders, LLC, No. 13-2795, 2016 WL 156264, at *4 (W.D. La. Jan. 12, 2016) ("Swiftships had absolutely no legal right, or even a decent argument, for the retention of those funds."). Thus, based on the showing made by Pikaluk, summary judgment in favor of the Horseshoe Defendants is granted and Pikaluk's state law LUPTA claim, included the request for treble damages, is dismissed.

Conversion

The final remaining state law claim is conversion.[7] Pikaluk contends that the Horseshoe Defendants converted his property by refusing to redeem and cash his casino chips. Conversion is "an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time." An Erny Girl, L.L.C. v. BCNO 4 L.L.C.,

---

[7]The Horseshoe Defendants did not specifically address conversion, but sough dismissal of all state law claims. See Record Document 54 at ¶ 5. Moreover, the Horseshoe Defendants seek dismissal of any remaining claims pursuant to La. R.S. 27:27.4.

2018-0360 (La. App. 4 Cir. 9/26/18), 257 So.3d 212, 222.  Conversion is committed when any of the following occurs: "1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel." Id.  Pikaluk has again pointed this Court to no case law analyzing a conversion claim in this context.

Conversely, the Horseshoe Defendants have sought dismissal of any remaining claims – to include the conversion claim – pursuant to La. R.S. 27.27.4, which provides:

> A. Any licensee, permittee, or the casino gaming operator may exclude or eject any person if such person engages in unlawful or disruptive conduct. No licensee, permittee, or the casino gaming operator may exclude or eject any person from a gaming establishment based upon race, color, creed, national origin, sex, or disability as defined in R.S. 51:2232.

> B. Any licensee or casino gaming operator licensed pursuant to the provisions of this Title, and any employee of a licensee or casino gaming operator *shall not be liable for any monetary damages or any other remedy in any judicial proceeding as a result of the exclusion or removal* of any person for any reason, except race, color, creed, national origin, sex, or disability as defined in R.S. 51:2232.

La. R.S. 27:27.4 (emphasis added).  Pikaluk argues this statute is inapplicable because he has not asserted any claims based on his exclusion from Horseshoe.  The Court is unconvinced as his case turns on his removal from Horseshoe due to the companywide ban.  In his Second Amended Complaint, he even references a "perp walk."  Record Document 54-4 at ¶ 34.  Pikaluk also contends that the Horseshoe Defendants have waived any defense relating to this statute because the statute was not asserted as an

affirmative defense in the answer. Yet, the Fifth Circuit has "repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later." Motion Med. Techs., L.L.C. v. Thermotek, Inc., 875 F.3d 765, 772 (5th Cir. 2017). Therefore, based on the showing made by Pikaluk, summary judgment in favor of the Horseshoe Defendants is granted and Pikaluk's state law conversion claim is dismissed pursuant to Section 27.4(B).

## CONCLUSION

Based on the foregoing analysis, the Motion for Summary Judgment (Record Document 54) filed by the Horseshoe Defendants is **GRANTED**. The Court finds that the Horseshoe Defendants are not private actors whose conduct can be fairly attributable to the Bossier City Police Department, i.e., the State, for purposes of Section 1983 liability. The Court further finds that Pikaluk's state law claims fail. Accordingly, all of Pikaluk's claims against the Horseshoe Defendants are **DISMISSED**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of May, 2019.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT