**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

KYLE D. PIKALUK                                     CIVIL ACTION NO. 18-0215

VERSUS                                               JUDGE S. MAURICE HICKS, JR.

HORSESHOE ENTERTAINMENT, LP,          MAGISTRATE JUDGE HORNSBY
ET AL.

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment (Record Document 118) filed by Defendants, Horseshoe Entertainment, LP ("Horseshoe"), Steven Jones, Rob Brown, Jason Williams, Federico M. Arends, III, and James LaFleur (hereinafter referred to as the "Horseshoe Defendants"). The Horseshoe Defendants move for partial summary judgment on Plaintiff Kyle D. Pikaluk's ("Pikaluk") Louisiana Unfair Trade Practices Act ("LUTPA") claim and his additional state law claims of negligence, gross negligence, and conversion. See id. Pikaluk opposed the Motion for Partial Summary Judgment. See Record Documents 123 & 124. For the reasons which follow, the Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

This matter was remanded to the district court on April 6, 2020. See Record Document 91. The United States Court of Appeals for the Fifth Circuit affirmed in part, reversed in part, and remanded to the district court for further proceedings. See id. The Fifth Circuit stated:

> Pikaluk is a skilled blackjack player whom some casinos consider to be an "advantage player." An advantage player utilizes legitimate techniques to gain an edge while playing casino games like blackjack. The term does not refer to a player who cheats or uses illegal methods in playing the games.

In June 2016, Caesars Entertainment Corporation ("Caesars") contends that it permanently banned Pikaluk from all Caesars properties based on its identification of Pikaluk as an advantage player. ***Caesars contends it sent a letter to that effect, but Pikaluk denies receiving any notice of the ban, and we conclude that this is a disputed fact issue.***

Horseshoe Hotel & Casino ("Horseshoe") is a licensed gaming establishment and an affiliate of Caesars. In March 2017, Pikaluk played blackjack at Horseshoe in Bossier City, Louisiana. He won over $30,000. In order to cash out the winnings, Horseshoe required Pikaluk's identification at the register, and WinNet, Horseshoe's management software, displayed a message stating, "GUEST IS EVICTED COMPANYWIDE. CONTACT SECURITY."

Horseshoe employees then refused to cash in Pikaluk's chips and called Bossier City police. Officers Joseph Thomerson, Jordan Johnson, and Donald Razinsky (the "Officers") were dispatched to the scene. When the Officers arrived, Horseshoe security manager Steven Jones told Thomerson that Pikaluk had been banned from "Horseshoe and all their properties." ***Jones also told Thomerson that Pikaluk "knew he had been banned, that he had certified letters that he had been banned."*** Thomerson then arrested Pikaluk for criminal trespass. The charges were eventually dismissed.

Pikaluk sued Horseshoe and several of its employees (the "Horseshoe Defendants") under 42 U.S.C. § 1983 for violations of his constitutional rights stemming from his arrest. He also asserted state-law claims for malicious prosecution, negligence, violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), and conversion. Horseshoe moved for summary judgment on all claims. The district court granted the motion. This appeal followed.

Id. at 4-5 (emphasis added). On appeal, Pikaluk abandoned several state-law claims, including wrongful arrest, false imprisonment, battery, and conspiracy. See id. at 5, n. 2. The Fifth Circuit affirmed the district court's grant of summary judgment on Pikaluk's Section 1983 claim; reversed as to Pikaluk's malicious prosecution claim because genuine factual disputes existed; reversed as to Pikaluk's negligence/gross negligence claims and remanded for further consideration by the district court in the first instance; reversed as to Pikaluk's LUTPA claim because the district court did not consider Horseshoe's motivation;

and reversed as to Pikaluk's conversion claim because the district court did not analyze the substance of such claim and remanded for consideration of the merits.  See id. at 7, 11-15.

Defendants have now filed a motion for partial summary judgment seeking dismissal of Pikaluk's LUTPA, negligence/gross negligence, and conversion claims.  See Record Document 118.  Pikaluk did not address gross negligence in his opposition, but opposes the dismissal of the other state law claims.  See Record Document 123.  Defendants have not moved for dismissal of the malicious prosecution claim; thus, Pikaluk's malicious prosecution claim will proceed to trial.  The jury trial in this matter is currently set for October 4, 2021.

## LAW AND ANALYSIS

### I.    Partial Summary Judgment Standard.

Rule 56(a) provides, in pertinent part:

Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728.  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394

F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case."  Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000).  Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial.  See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

## II.     LUTPA Claim.

Under Louisiana law, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  La. R.S. 51:1405.  To recover under LUTPA, a plaintiff must establish some element of fraud, misrepresentation, deception or other unethical conduct.  See IberiaBank v. Broussard, 907 F.3d 826, 839 (5th Cir. 2018).  "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis."  Id.  However, courts "should find a practice unfair under the statute only when the practice offends established public policy and is immoral, unethical, oppressive or unscrupulous."  Id.  The range of acts prohibited under LUTPA is extremely narrow.  See id.  "The defendant's motivation is a critical factor—his actions must have been taken with the specific purpose of harming the competition."  Id. at 839-840.

Here, Pikaluk argues that the Horseshoe Defendant's refusal and failure to redeem

and cash his casino chips was an unfair and deceptive trade practice under LUTPA.  He

contends that such refusal was unethical, immoral, oppressive, deceptive, unfair,

substantially injurious, and unscrupulous act and is a misrepresentation or fraud by the

Horseshoe Defendants.   Previously, this Court granted summary judgment as to the

LUTPA claim, stating:

> [T]his Court cannot find that the refusal/failure to redeem Pikaluk's chips fails
> within the narrowly defined prohibited practices envisioned by LUTPA.
> Pikaluk has pointed this Court to no case law applying LUTPA in this context.
> Moreover, the Horseshoe Defendants have at a minimum "a decent
> argument" for refusing to cash Pikaluk's chips, that is, he was on the
> premises and gambling despite a companywide ban.  See Hadassa Inv. Sec.
> Nigeria, Ltd. v. Swiftships Shipbuilders, LLC, No. 13-2795, 2016 WL 156264,
> at *4 (W.D. La. Jan. 12, 2016) ("Swiftships had absolutely no legal right, or
> even a decent argument, for the retention of those funds.").  Thus, based on
> the showing made by Pikaluk, summary judgment in favor of the Horseshoe
> Defendants is granted and Pikaluk's state law LUTPA claim, included the
> request for treble damages, is dismissed.

Record Document 83 at 22.  The Fifth Circuit reversed on the ground that "the district court

did not assess a critical factor in any LUTPA claim:  the defendant's motivation."  Record

Document 91 at 13.  Citing Balthazar v. Hensley R. Lee Contracting, Inc., 2016-0920

(La.App. 4 Cir. 3/15/17), 214 So.3d 1032, 1043, the Fifth Circuit observed that Horseshoe's

"motivation and intent are critical factors in determining whether '[its] conduct was unfair

or deceptive."  Record Document 91 at 13.  The Fifth Circuit further noted that "Pikaluk

presented evidence that Horseshoe refused to cash his chips and had him arrested with

very little basis."  Id.

LUTPA  necessarily  entails  a  finding  of  immoral,  unethical,  oppressive,  or

unscrupulous conduct with an intent to deceive and or defraud.  Such allegations cannot

be taken lightly.  Moreover, summary judgment is generally inappropriate when it requires judicial determination of subjective facts such as motive or intent.  Credibility determinations are misplaced in summary judgment proceedings because the Court must take the non-movants' summary judgment evidence as true.  See Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc., 920 F.3d 958, 964 (5th Cir.), cert. denied, 140 S. Ct. 628, 205 L. Ed. 2d 390 (2019).  It is also "less fashionable to grant summary judgment" when state of mind is at issue a party's state of mind is inherently a question of fact which turns on credibility. Id.  Therefore, at this stage, this Court will not assess Horseshoe's motivation in failing to redeem and cash Piklauk's casino chips in March 2017.  Such determination is better left to the jury as it requires credibility determinations and weighing of the testimony.  The Horseshoe Defendants' Motion for Partial Summary Judgment is **DENIED** as to Pikaluk's LUTPA claim.

The Court must also address Pikaluk's claim for treble damages under LUTPA.  Like the underlying LUTPA claim, this Court previously dismissed Pikaluk's request for treble damages.  See Record Document 83 at 22.  The Fifth Circuit reversed this holding.  See Record Document 91 at 13.  The Horseshoe Defendants now seek dismissal of Pikaluk's claim for treble damages under LUTPA.

The LUTPA statute states that "[i]f the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award the person bringing such action three times the actual damages sustained." La. R.S. 51:1409(A).  The award of treble damages under the LUTPA "is punitive in nature and must be strictly construed."  B & G Crane Serv., L.L.C. v. Duvic, 2005-1798 (La. App. 1 Cir. 5/5/06), 935 So. 2d 164, 170, *writ denied*, 2006-1820 (La.

10/27/06), 939 So. 2d 1280.

Here, the cease and desist letter was not sent by the attorney general to Horseshoe until July 29, 2020 – over two years after the lawsuit was filed.  Horseshoe redeemed Pikaluk's chips in January 2021, approximately six months after receipt of the letter.  The issue here surrounds Pikaluk's failure to include in any complaint the factual allegation that Horseshoe received a cease and desist letter and then continued the alleged unfair and deceptive practices.  The record reflects that counsel for Piklauk was present for at least two conferences with the court after remand and after the July 29, 2020 cease and desist letter.  See Record Documents 110, 111, 125, & 126.  With input from counsel, scheduling orders were entered following these conferences and the orders provided that the time for amendment of pleadings had closed.  See id.  Counsel for Pikaluk never raised the potential of an amendment during these conferences.  See Record Document 132 at 4. It was not until March 2021 that Pikaluk sought leave to file a second amended and restated complaint to add the factual allegations relating to the attorney general cease and desist letter.  See id. at 3.  The Court ultimately denied Pikaluk's motion for leave because there had been no attempt to articulate good cause for seeking leave to amend after the deadline to amend had passed.  See Record Document 132 at 5; Record Document 135.

"Courts have squarely held that a plaintiff must affirmatively plead that a defendant's conduct has persisted after notice from the attorney general of a LUTPA violation in order to adequately plead a claim for treble damages." Thomas Indus. & Mech. Contractors, LLC v. Just., No. CV 20-1102, 2020 WL 3429892, at *3–4 (E.D. La. June 23, 2020), citing F&M Mafco, Inc. v. Ocean Marine Contractors, LLC, No. 18-5621, 2019 WL 3306521, at *6 (E.D. La.  2019) ("Because [plaintiff] ... fails to allege in its counterclaim that the attorney general

has put ECapital on notice of a LUTPA violation, F&M fails to state a claim for treble

damages under LUTPA."); Andretti v. Sports Mktg. La. LLC v. NOLA Motorsports Host

Comm., Inc., 147 F. Supp. 3d 537, 571 (E.D. La.  2015) (finding that a plaintiff failed to

state a claim for treble damages when plaintiff did "not allege anywhere in its complaint or

in any amended complaint that the attorney general has put the defendants on notice of a

LUTPA violation, as required by the statute in order to be entitled to treble damages.").

Courts have reached this conclusion because the "notice from the attorney general serves

the purpose of a 'cease and desist' notice, after which continued violation of LUTPA

triggers liability for treble damages."  Thomas Industrial & Mechanical Contractors, LLC,

2020 WL 3429892, *4, citing Rincon v. Owens Collision & Repair Serv. Ctr., No.

2019-0383, 2018 WL 4520384, at *6 (La. App. 1 Cir. Sept. 21, 2018).  "[N]otice from the

attorney general is an essential element of the claim for treble damages and must be

alleged in the complaint."  Thomas Industrial & Mechanical Contractors, LLC, 2020 WL

3429892, *4.

In Thomas Industrial & Mechanical Contractors, LLC, the court examined "three

cases where courts have awarded treble damages when the defendants received notice

from the attorney general only after the commencement of the suit."  2020 WL 3429892,

*4, citing AIM Business Capital L.L.C. v. Reach Out Disposal, No. 13-241, 2014 WL

1401526, at *3 (W.D. La. Apr. 8, 2014) (finding that treble damages appropriate because

"[a]fter notification for the Louisiana Attorney General's Office, [defendant] failed to pay AIM

on outstanding invoices it verified"); Hadassa Investment Security Nigeria, Ltd. v. Swiftships

Shipbuilders, LLC, No. 13-2795, 2016 WL 156264, at *7 (W.D. La. Jan. 11, 2016) (finding

treble damages appropriate when the attorney general had given defendants notice, and

defendants continued to withhold a deposit for a ship); McFadden v. Import One, Inc., 56 So. 3d 1212, 1223-24 (La. App. 3 Cir. 2011) (finding treble damages appropriate when the attorney general had given defendants notice of a LUTPA violation, and defendants continued to retain plaintiff's car in violation of the statute).   While these cases involved ongoing violations of LUTPA that persisted past the date the attorney general gave notice to the defendants – as is the allegation in the instant matter, it is not clear in those cases if the issue of whether a plaintiff must affirmatively plead that defendants engaged in acts violating LUTPA after receiving notice from the attorney general was even raised.

While the issue of treble damages presents a close legal call, the Court will dismiss such claim because Piklauk has not pleaded that the attorney general put Horseshoe on notice of a LUTPA violation.  See Cutrera v. Bd. of Sup'rs of La. State Univ., 429 F.3d 108, 113 (5th Cir.2005) ("As a general rule, '[a] claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court.'").  Pikaluk presented no good cause for the delay from July 2020 to March 2021 in seeking to amend his complaint to add the appropriate factual allegations.  Moreover, the Court notes the award of treble damages under the LUTPA is punitive and is subject to strict construction.  See B & G Crane Serv., L.L.C., 935 So. 2d at 170.  The Court finds Pikaluk is not entitled to seek treble damages under LUTPA.

III.    **Negligence and Gross Negligence Claims.**

Pikaluk asserts a state law claim for negligence/gross negligence, arguing the Horseshoe Defendants negligently caused his arrest in failing to follow Horseshoe's own security procedures and policies in requesting assistance from the Bossier City Police Department.  Specifically, Pikaluk maintains that the Horseshoe Defendants breached the

duty of care owed by a business owner to its patrons by failing to verify the accuracy of any

messages or information about him in the WINet before calling the police.  See Record

Document 118-1 at 15.

In Pitre v. Louisiana Tech University, 673 So.2d 585 (La. 1996), the Louisiana

Supreme Court explained the duty-risk analysis to determine liability under Article 2315.

The duty-risk analysis examines "the conduct of each individual party and the peculiar

circumstances of each case."  Id. at 589.  "The relevant inquiries are:

(1)    Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?

(2)    What, if any, duties were owed by the respective parties?

(3)    Whether the requisite duties were breached?

(4)    Was the risk, and harm caused, within the scope of protection afforded by the duty breached?[1]

(5)    Were actual damages sustained?

Id. at 589-590.  "If the plaintiff fails to satisfy one of the elements of duty-risk, the defendant

is not liable."  Id. at 590.

Previously, this Court dismissed Pikaluk's negligence claim because he failed to

satisfy the fourth inquiry, that is, legal causation.  See Record Document 83 at 6.  The

Court reasoned that the independent police investigation – and not the actions of the

Horseshoe Defendants – was the legal cause of Pikaluk's alleged injuries caused by his

arrest.  See id. at 18.  The Fifth Circuit reversed this finding, holding:

---

[1]Stated another way, this inquiry focuses on whether the party's substandard conduct was a legal cause of the injuries at issue.  See Toston v. Pardon, 2003-1747 (La. 4/23/04), 874 So.2d 791, 801.

> But we have already concluded that the Officers did not conduct an independent investigation. We conclude that the other elements [of the duty-risk analysis] should be considered by the district court in the first instance.

Record Document 91 at 12.

The Horseshoe Defendants now move for summary judgment on Pikaluk's negligence claim, arguing he "cannot satisfy the duty and breach of duty elements of his negligence claims."  Record Document 118-1 at 15.  The Horseshoe Defendants state there is no specific law imposing a duty on a casino to independently investigate and verify the accuracy of the information underlying Pikaluk's company-wide status as a trespasser prior to reporting it to the authorities.  The Horseshoe Defendants also point to La. R.S. 27:27.4 (2001),[2] which was in place in March 2017 and allowed a casino to remove any person from their premises for any reason other than race, color, creed, national origin, sex, or disability.

Pikaluk disputes notice or any type of knowledge of the companywide ban.  See Record Document 123-33.  In fact, he has presented evidence of solicitations and invitations from Caesars Entertainment that he received as late as February 2021.  See id. Piklauk also now points the Court to a "Defiant Trespass" policy/procedure set forth in Horseshoe's Guest Safety/Security Department Handbook.  See Record Document 123-4 at 3 (Horseshoe 0052).   The policy/procedure states:

**DEFIANT TRESPASS**

A person who has previously been ejected but who has returned to the premises should be contacted and advised of their eviction status and

---

[2]In March 2017, Section 27.4(A) provided, "Any licensee, permittee, or the casino gaming operator may exclude or eject any person for any reason, except race, color, creed, national origin, sex, or disability as defined in R.S. 51:2232(11)."

escorted off the property.   If the patron refuses to leave, the security supervisor will contact BCPD and have them arrested for trespassing.

Id.

"Duty is a question of law."  Ebarb v. Matlock, 46,243 (La. App. 2 Cir. 5/18/11), 69 So. 3d 516, 520, writ denied, 2011-1272 (La. 9/23/11), 69 So. 3d 1164.   Courts must inquire whether a plaintiff has any law—statutory, jurisprudential or arising from general principles of fault—to support his or her claim.  See id.  As stated by the Fifth Circuit in its opinion, when Pikaluk showed his identification to cash out his winning, Horseshoe's management software, displayed a message stating, "GUEST IS EVICTED COMPANYWIDE. CONTACT SECURITY."   Record Document 91 at 4.   Horseshoe employees then refused to cash in Pikaluk's chips and called Bossier City police.  See id. When the police officers arrived, Horseshoe security manager Steven Jones ("Jones") told one of the officers that Pikaluk had been banned from "Horseshoe and all their properties." Id.  Jones also told one of the officers that Pikaluk "knew he had been banned, that he had certified letters that he had been banned."  Id.  Pikaluk was then arrested for criminal trespass. See id. The charges were eventually dismissed. See id.[3]  In its opinion, the Fifth Circuit also noted that "Pikaluk presented evidence that Horseshoe refused to cash his chips and had him arrested with very little basis."  Id. at 13.

Here, the Court is faced with a statute providing that the casino gaming operator may exclude or eject any person for any reason, except race, color, creed, national origin, sex, or disability.  See La. R.S. 27:27.4 (2001).  Yet, in contrast, the Horseshoe defiant

---

[3]In its opinion, the Fifth Circuit stated that "the underlying facts relevant to the summary judgment inquiry are largely undisputed, but where they are disputed, we provide the facts in the light most favorable to the nonmovant."  Record Document 91 at 4, n. 1.

trespass policy provides that "a person who has previously been ejected but who has returned to the premises should be contacted and advised of their eviction status and escorted off the property."  Record Document 123-4 at 3 (Horseshoe 0052).  Only if the patron refuses to leave is the security supervisor to contact BCPD and have them arrested for trespassing.  See id.  The undisputed facts here demonstrate that Pikaluk was not contacted, advised of his eviction status, and escorted off the property.  At this stage, the Court believes the facts show he was never given the chance to simply be escorted off the property or even given the chance to refuse to leave.  Rather, he was advised of his eviction status and brought to meet the BCPD officers who had already been called to arrest him for trespassing.  See Record Document 91 at 4.  Jones also told one of the officers that Pikaluk "knew he had been banned, that he had certified letters that he had been banned."  Id.  Again, Pikaluk's notice of the ban is a disputed fact issue.

Piklauk points this Court to several cases in support of his position that the negligence claim – that the Horseshoe Defendants negligently caused his arrest and prosecution – should proceed to a jury.  See Firstly v. Bill Watson Ford, Inc., 268 So.2d 314 (4th Cir. 1972); Edmond v. Hairford, 539 So.2d. 815, 818-819 (3rd Cir. 1989) ("Great caution is necessarily demanded in determining 'fault' in the context of society's efforts to suppress crime.  Our Civil Code does not intend, and society could not tolerate, that reasonable efforts towards crime suppression be punished, and therefore curtailed, by civil liability for simple mistake.  However, the efforts must be reasonable; the individual remains obliged to act as a reasonable person would, taking into consideration all of the circumstances. . . .  Applying these principles, we conclude that defendant was clearly at fault in procuring plaintiff's arrest and imprisonment."); and Madison v. Orleans Datsun,

Inc., 405 So.2d 350 (4th Cir. 1981).  While these cases are not directly on point, they

persuade this Court that this is not a case where there is a categorical rule of no liability

and, thus, there should not be a finding at the summary judgment stage of no duty.  See

Cowan v. Jack, 2005-0175 (La. App. 4 Cir. 12/21/05), 922 So. 2d 559, 569–70, writ denied,

2006-0174 (La. 4/24/06), 926 So. 2d 544.[4]  It will be for the jury to determine if the actions

_____

[4]In Cowan, the Louisiana appellate court reasoned:

Although, as Ms. Cowan contends, it generally is inappropriate to resolve
negligent cases based on a legal finding of "no duty," an exception has been
recognized when there is a categorical rule of no liability. . . .

> The duty issue in the determination of liability in negligence
> cases is often confused with the scope of liability or scope of
> protection issue. The former usually questions the existence of
> a duty, while the latter (which assumes that a duty exists)
> usually questions whether the plaintiff's injury was one of the
> risks encompassed by the statute or rule of law which imposed
> the duty.

> The following method has been suggested for distinguishing
> between the duty element and the scope of protection element
> in negligence cases:

> As is often the case with tort puzzles, a view through the prism
> of trial court procedure points toward a solution.  Careful
> speakers will reserve the formulation, "defendant has no duty,"
> for situations controlled by a rule of law of enough breath and
> clarity to permit the trial judge in most cases raising the
> problem to dismiss the complaint or award summary judgment
> for defendant on the basis of the rule.  On the other hand, if the
> case is of a sort such that typically the judge will need to know
> the details of the occurrence before ruling for defendant—i.e.,
> if the case is of a type that must normally reach the directed
> verdict (or later) stage before defendant can expect to
> prevail—then the appropriate formulation is in terms of [scope
> of protection].

D. Robertson, W. Powers, Jr. & D. Anderson, Cases and Materials on Torts
161 (1989). The authors therefore submit that the duty element normally

of the Horseshoe Defendants were reasonable taking into consideration all of the circumstances of the March 2017 incident.  The Horseshoe Defendants' Motion for Partial Summary Judgment is **DENIED** as to Pikaluk's negligence claim.

The Horseshoe Defendants also moved for summary judgment as to Pikaluk's gross negligence claim.  See Record Document 118-1 at 18-19.  "Gross negligence has been defined as the want of even slight care and diligence and the want of that diligence which even careless men are accustomed to exercise."  Rabalais v. Nash, 2006-0999 (La. 3/9/07), 952 So. 2d 653, 658.  Gross negligence requires an entire absence of care and the utter disregard of prudence, amounting to complete neglect of the rights of others.  See id. It is an extreme departure from ordinary care or the want of even scant care.  See id.  The Horseshoe Defendants argue there is simply no basis in the facts or the law for finding their conduct rose to the level of gross negligence.  The Court tends to agree, but need not reach the ultimate conclusion because Pikaluk has waived any gross negligence claim.  In his opposition, Pikaluk failed to address gross negligence, thereby waiving such claim. See Payton v. Town of Maringouin, No. CV 18-563-JWD-EWD, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) ("By analogy, failure to brief an argument in the district court waives that argument in that court.").  The Horseshoe Defendants' Motion for Partial Summary Judgment is **GRANTED** as to Pikaluk's gross negligence claim.

## IV.   Conversion Claim.

---

comes into question when there is a categorical rule excluding liability as to whole categories of claimants or claims.

Id. at 569-570.

Conversion is "an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time." An Erny Girl, L.L.C. v. BCNO 4 L.L.C., 2018-0360 (La. App. 4 Cir. 9/26/18), 257 So.3d 212, 222.  Here, Pikaluk's conversion claim is based on Horseshoe's failure to cash his chips.  In January 2021, Horseshoe seemingly admitted its error in failing to cash Pikaluk's chips and redeemed Pikaluk's chips at the full value of $41,687.02.  See Record Document 118-2 at 58-63.  This amount was approved by Pikaluk.  See id.  The amount included the value of the chips, shipping costs, and interest.  See id.

Based on this redemption, the Horseshoe Defendants move for summary judgment and dismissal of Pikaluk's conversion claim, arguing such claim is no longer viable.  See Record Document 118-1 at 23.  They contend Pikaluk has been made whole and there are no additional damages a jury could award for the conversion claim.  See id.  Conversely, citing Louisiana case law, Pikaluk believes he still maintains damages claims against Horseshoe for the worry, anguish, distress, inconvenience, and shock that he has suffered during the four years that Horseshoe refused to cash the chips.  See Record Document 123 at 26-27.

"The traditional damages for conversion consist of the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion." Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So. 2d 756, 761 (La. 1985).  Notwithstanding, "damages for mental anguish and inconvenience arising from the loss of use of property have been allowed in tortious conversion cases." Id. at 762; see also Bostwick v. Avis Rent-A-Car, 215 So. 2d 854, 857 (La. Ct. App. 1968) ("The

jurisprudence of this state is now well settled that the conversion of the property of another

is a tort, and that the invasion of private property can produce mental shock, anguish and

humiliation.") and Gen. Elec. Credit Corp. v. Smigura, 371 So. 2d 1363, 1365 (La. Ct.

App.), *writ denied sub nom.* Gen. Elec. Credit Corp v. Smigura, 375 So. 2d 942 (La. 1979)

("Clearly, General Electric could not avoid damages for its tortious conversion by returning

the seized property.").  Piklauk has submitted a sworn declaration stating:

> For approximately three years and nine months (at least 45 months total) I was distressed, upset, concerned, and worried about whether I would ever receive my money from the Horseshoe.  During that 45-month period I could not commit on or rely upon receiving that money or using any of those funds.  I could not include those funds in planning my financial affairs.

> I was shocked by Horseshoe's refusal to cash my chips and to keep my money.  I was greatly inconvenienced by Horseshoe's conduct including the inconvenience I experienced in arranging for the casino chips to be shipped to Horseshoe from Canada when it finally said it would cash my chips.  I was distressed and emotionally upset for 45-months by not receiving my money and being able to use my money for my personal affairs for over three years.

Record Document 123-33 at ¶¶ 9-10.  Based on the foregoing, the Court finds that Pikaluk

may pursue a general damages award for his conversion claim.  The determination of the

appropriate general damages award , if any, is a question of fact for the jury.  Thus, the

Horseshoe Defendants' motion for partial summary judgment as to Pikaluk's conversion

claim is **DENIED**.

## CONCLUSION

Based on the foregoing analysis, summary judgment is (1) **DENIED** as to Pikaluk's

LUTPA claim, however Pikaluk is not entitled to seek treble damages under LUTPA; (2)

**DENIED** as to Pikaluk's negligence claim, but **GRANTED** as to his gross negligence claim;

and (3) **DENIED** as to Pikaluk's conversion claim.  Pikaluk's malicious prosecution claim

will also proceed to trial.

An order consistent with the terms of the instant Memorandum Ruling shall issue

herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 17thday of August, 2021.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT